IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE FIRST LIBERTY INSURANCE CORPORATION,** | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **NO.  14-2966** |
| **JOHN A. ANDERSON,** | |
| Defendant. | |

PAPPERT,  J.                                                     May 23, 2016

## MEMORANDUM

The First Liberty Insurance Corporation ("First Liberty") brings this declaratory judgment action asking the Court to hold that First Liberty has no obligation to defend or indemnify John A. Anderson ("Anderson") under a series of insurance policies.  The parties have filed cross-motions for summary judgment.  The Court grants First Liberty's motion, denies Anderson's motion and enters judgment in favor of First Liberty.

## I.

On October 1, 2013, Lawrence Krieger and Helen Anderson, as parents/guardians of D.A.K., a minor, filed a personal injury lawsuit against Anderson in the Philadelphia County Court of Common Pleas, I.D. No. 130903784 (the "Underlying Action").  The action arose from allegations that Anderson sexually abused D.A.K.  Specifically, the complaint in that case alleges that:

On multiple occasions between the years of 2007-2010, when the Minor Plaintiff, was ages nine through twelve, the Defendant sexually abused, molested, and indecently assaulted the Minor Plaintiff and grabbed Minor Plaintiff's genital area and holding said area for several seconds at a time before releasing, all of which constitutes forcible compulsion under Pennsylvania law.  (Pl.'s Mot. Summ. J., Ex. A ("Underlying Compl."), ¶ 7.)

On or about March 11, 2013, before the Honorable Robert P. Coleman, Defendant, John A. Anderson, entered a pleas of guilty to the Corruption of Minors - 18 § 6301 §§ A1.  (*Id.* ¶ 10.)

As a result of Defendant, John A. Anderson's conduct and actions, Minor Plaintiff, was forced to endure, and sustained damages . . . (*Id.* ¶ 12.)

Defendant's actions and conduct, including but not limited to, sexual molestation, indecent assault, and sexual assault of Minor Plaintiff, was committed with the full intent and capability to cause great bodily, emotional, and mental harm to Minor Plaintiff, D.A.K., and was committed through the use of forcible compulsion on and/or upon Minor Plaintiff.  (*Id.* ¶ 17.)

Defendant, John A. Anderson's conduct constituted intentional physical battery upon Minor Plaintiff, and was undertaken deliberately and with actual malice.  (*Id.* ¶ 23.)

The occurrence was directly and proximately caused by the reckless and wanton conduct of Defendant, John A. Anderson, in his role as a close family member, and as an adult in loco parentis to Minor Plaintiff, owed a duty of care to protect and care for Minor Plaintiff, which he breached, causing harm to Minor Plaintiff, and consisted of, among other things, the following: . . . (b) knowingly and intentionally engaging in sexual molestation of Defendant's great-nephew; (c) knowingly and intentionally forcing Minor Plaintiff to engage in lewd sexual acts . . . (*Id.* ¶ 26.)

Based on these allegations, the complaint ("Underlying Complaint") claimed damages for

assault, battery, negligence/recklessness, and negligent and intentional infliction of emotional

distress.  (*Id.* ¶¶ 15–35.)

In connection with the Underlying Action, Anderson sought both defense and

indemnification from First Liberty based on four homeowners insurance policies First Liberty

issued to Anderson between 2007 and 2010.  The four policies (collectively, the "Policy")

contain numerous identical provisions.  First, the Policy defines the scope of coverage as follows:

> **SECTION II - LIABILITY COVERAGES**
> **COVERAGE E - Personal Liability**
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
> 1. Pay up to our limit of liability for the damages for which the "insured" is legally liable.  Damages include prejudgment interest awarded against the "insured";
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(Pl.'s Mot. Summ. J., Ex. A, Insurance Policy ("Policy"), at 11.)  "Occurrence," as used in that

provision, is defined as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
> a. "Bodily injury"; or
> b. "Property damage."

(Policy at 1.)

The Policy sets forth two relevant exclusions:

> **SECTION II - EXCLUSIONS**
> **Coverage E - Personal Liability and Coverage F - Medical Payments to Others**
> do not apply to "bodily injury" or "property damage":
> a. Which is expected or intended by the "insured"

(Policy at 11.)  That provision is amended by way of an attached "Amendatory Endorsement."

> **SECTION II - EXCLUSIONS**

> Item **1.a** under **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** is amended is follows:

> Which is expected or intended by the "insured", even if the resulting "bodily injury"

3

or "property damage"
(1) is of a different kind, quality, or degree than initially expected or intended; or
(2) is sustained by a different person, entity, real or personal property, than initially expected or intended.
However, this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.[1]

(Policy, at Amendatory Endorsement form FMHO 2493, p. 2.) The second relevant exclusion states:

**Coverage E - Personal Liability and Coverage F - Medical Payments to Others**
do not apply to "bodily injury" or "property damage": . . .

k.     Arising out of sexual molestation, corporal punishment or physical or mental abuse;

(*Id.* at 11–12.)

First Liberty provided a defense to Anderson in the Underlying Action subject to a reservation of rights.  On May 27, 2015, First Liberty sought a declaratory judgment that it has neither a duty to defend nor indemnify Anderson under the Policy.  The Underlying Action ultimately settled, and First Liberty and Anderson reserved their respective rights to litigate coverage.  First Liberty filed its motion for summary judgment on February 16, 2016, Anderson responded and filed a cross-motion for summary judgment on March 15, 2016 and First Liberty responded to the cross-motion on March 31, 2016.

## II.

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A factual dispute is "material" only if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477

---

[1]  In arguing that First Liberty misquotes the Policy language, (*see* Def.'s Mem. Supp. Summ. J. 6 n.1), Anderson fails to consider the Amendatory Endorsement to the Policy.

U.S. 242, 248 (1986).  For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  *Id.*

On summary judgment, the moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145–46 (3d Cir. 2004).  It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.  *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by the parties, the court must accept as true the allegations of the non-moving party.  *Anderson*, 477 U.S. at 255.

Although the moving party must establish an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  *Id.* at 325.  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  The mere existence of some evidence in support of the non-movant will not be adequate to support a denial of a motion for

summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. *Anderson*, 477 U.S. at 249–50.

These summary judgment rules do not apply any differently where there are cross-motions pending. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008). "'Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.'" *Id.* (quoting *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)).

## III.

### A.     Duty to Defend

"An insurance company's duty to defend a suit against an insured is determined solely on the basis of the allegations of the complaint in the underlying action."[2] *Nat'l Fire Ins. Co. of Hartford v. Robinson Fans Holdings, Inc.*, No. Civ.A.10-1054, 2011 WL 1327435, at *1 (W.D. Pa. Apr. 7, 2011); *see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006). In other words, the duty to defend an insured in a suit brought by a third party depends upon a determination of whether the third party's complaint triggers coverage. *Kvaerner*, 908 A.2d at 896 (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)). That duty "is broader than the duty to indemnify, in that the former duty

---

[2]  The parties agree that the insurance contract is governed by Pennsylvania law. *See Frog. Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (Pennsylvania conflict of laws principles dictate that an insurance contract is guided by the law of the state in which it is delivered) (citing *Travelers Indem. Co. v. Fantozzi ex rel. Fantozzi,* 825 F. Supp. 80, 84 (E.D. Pa. 1993)).

arises whenever an underlying complaint may 'potentially' come within the insurance coverage." *The Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999). "In determining the existence of a duty to defend, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." *Id.* at 746. "[A]n insurer is not required to defend a claim when it is apparent on the face of the complaint that none of the injuries fall within the purview of the insurance policy." *Peerless Ins. Co. v. Brooks Sys. Corp.*, 617 F. Supp. 2d 348, 356 (E.D. Pa. 2008).

First Liberty alleges that it has no duty to defend Anderson because the allegations of sexual abuse in the Underlying Complaint do not meet the definition of "occurrence" under the Policy. Additionally, it asserts that the Underlying Action falls within both (a) the exclusion for "expected" or "intentional" conduct; and (b) the exclusion for allegations of sexual abuse.

### 1.      Whether the Allegations of the Underlying Complaint Constitute an "Occurrence"

In Pennsylvania, the insured bears the burden of proving facts that bring its claim within the policy's affirmative grant of coverage. *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996). "To qualify for coverage in the first place, the insured's underlying complaint must contain allegations of an 'occurrence' under the policy." *Allstate Ins. Co. v. Hopfer*, 672 F. Supp. 2d 682, 686 (E.D. Pa. 2009). In this case, "'[o]ccurrence' means *an accident*, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury'; or b. 'Property damage.'" (Policy at 1 (emphasis added).)

The Pennsylvania Supreme Court has defined "accident," as used in an insurance policy,

7

as follows:

> An accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident.

*Brenneman v. St. Paul Fire & Marine Ins. Co.*, 192 A.2d 745, 747 (Pa. 1963). "[T]he fortuity of the events in question is the key factor to consider" in determining whether there has been an "accident." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). "Qualification of a particular incident as an accident seems to depend on two criteria: 1. the degree of foreseeability, and 2. the state of mind of the actor in intending or not intending the result." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009) (quoting *Black's Law Dictionary* 16 (9th ed. 2009) (quoting John F. Dobbyn, *Insurance Law in a Nutshell* 128 (3d ed. 1996))). "The vantage point of the insured, not that of the person who committed the injurious act, determines whether an injury is caused by an accident." *Melrose Hotel Co. v. St. Paul Fire and Marine Ins. Co.*, 432 F. Supp. 2d 488, 507 (E.D. Pa. 2006), *aff'd*, 503 F.3d 339 (3d Cir. 2007).[3]

No accident occurs when the conduct of the insured is alleged to be intentional. Id. A complaint's pleading of an intentional tort, such as a willful and malicious assault, sets forth an intentional act and not an "accident." *Id.* at 506; *see also Westfield Ins. Co. v. Granese*, No. 10–795, 2011 WL 346593, at *4 (E.D. Pa. Feb. 4, 2011) (finding insurer did not have a duty to defend or indemnify insured in the underlying civil action against the insured for assault and

---

[3] Anderson's brief defines "occurrence" solely by reference to the Webster Merriam Dictionary and Black's Law Dictionary. He offers no analysis of how "occurrence" has been defined in the specific context of Pennsylvania insurance law.

battery).  "[W]hile the allegations in the underlying complaint will trigger a duty to defend, 'the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead, it is necessary to look at the factual allegations contained in the complaint.'" *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am.*, 581 F. Supp. 2d 677, 694 (W.D. Pa. 2008) (citing *Mutual Benefit Insurance Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)); *see also Nationwide Mut. Fire Ins. Co. v. Malofiy*, No. Civ.A.10-2410, 2011 WL 1050050, at *6 (E.D. Pa. Mar. 22, 2011) ("It is only the factual allegations and not the cause of action pled that determines policy coverage.").

The Underlying Complaint alleges intentional acts.  It states that over the course of several years, (1) Anderson "sexually abused, molested, and indecently assaulted the Minor Plaintiff and grabbed Minor Plaintiff's genital area and holding said area for several seconds at a time before releasing, all of which constitutes forcible compulsion under Pennsylvania law;" (2) Anderson regularly got into bed with Minor Plaintiff while he was sleeping; and (3) Anderson pled guilty to the charge of Corruption of Minors in connection with these occurrences. (Underlying Compl. ¶¶ 7, 8, 10.)  It further alleges that, as a result of Anderson's actions, the Minor Plaintiff endured sexual abuse, sexual assault, and indecent aggravated assault.  (*Id.* ¶ 12.) The causes of action include, in part, assault, battery and intentional infliction of emotional distress.  (*Id.* ¶¶ 15–20, 21–24, 30–35.)

While Anderson concedes that the Underlying Complaint's allegations of intentional torts "would not entitle Mr. Anderson to a defense or indemnity under his homeowners' polices," he argues that "Counts III and IV of the Complaint allege negligence and recklessness, both of which necessarily infer elements of accidental, expected conduct and/or unintentional

9

consequences."  (Def.'s Mem. Supp. Summ. J., 6.)  As noted above, however, when examining a complaint to determine duty to defend, "the court should focus its analysis on the substance of the allegations rather than on 'the particular cause of action that a complainant pleads.'" *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.,* 513 F. Supp. 2d 157, 165 (M.D. Pa. 2007) (quotations omitted); *see also Erie Ins. Exchange v. Muff*, 851 A.2d 919, 931 (Pa. Super. Ct. 2004) ("We are mindful of the danger that an artfully-drafted pleading may attempt to circumvent the 'expected or intended' personal injury limitation on a homeowner's insurance policy by 'liberally sprinkling' the word negligence throughout the complaint.").  The allegations forming the basis of the negligence causes of action in the Underlying Complaint specifically rely on intentional behavior by Anderson including: "failing to provide Minor Plaintiff with a safe environment, free from the known risks of being sexually and/or physically abused;" "knowingly and intentionally engaging in sexual molestation of Defendant's great-nephew;" "knowingly and intentionally forcing Minor Plaintiff to engage in lewd sexual acts;" "failure to disclose Defendant's sexual molestation tendencies to Minor Plaintiff's Parents and Natural Guardians;" "failure to take reasonable safety and security measures to ensure the safety and well being of Minor Plaintiff;" and "failure to take reasonable measures against foreseeable assaults and/or sexually lewd and/or sexual attacks on Minor Plaintiff."  (Underlying Compl. ¶ 26; *see also id.* at ¶ 32.)  Although styled as negligence claims, these counts rest solely on Anderson's intentional acts.

Alternatively, Anderson contends that to determine if his conduct amounted to intentional sexual abuse or molestation, the Court must consider his and D.A.K.'s deposition testimony in the Underlying Action, as well as the guilty plea colloquy from his criminal case.  He concedes

that "Anderson's alleged conduct was described in the underlying Complaint in a manner that

was calculated to plead a legally sustainable cause of action for sexual assault," but the

depositions and guilty plea colloquy show that "the actual nature and substance of his actions are

more clearly revealed . . . as being akin to immature adolescent horseplay consisting of stomach

slapping; wrestling; crotch grabbing; crude locker room commentary on genital size; ignoring

bathroom privacy expectations; and occasionally sleeping the in the same bed as his nephew, all

of which were without sexual overtones." (Def.'s Mem. Supp. Summ. J. 7–8.)  Anderson fills

the remainder of his summary judgment motion with cumulative and inherently inimical (to his

argument) passages from the depositions and plea colloquy.  Anderson's point is that

"[n]otwithstanding the allegations in the underlying Complaint, Anderson's juvenile behavior,

while inappropriate, clearly did not rise to the level of sexual assault, molestation, corporal

punishment, physical abuse, mental abuse, or other conduct reasonably intended or expected to

cause bodily harm within the meaning of the homeowners' policies."  (Id. at 17.)

     This argument advocates, among other things, an incorrect standard of review.  Again, in

Pennsylvania an insurer's duty to defend its insured in a lawsuit brought by a third party is

"determined solely from the language of the complaint against the insured."  *Kvaerner*, 908 A.2d

at 896; *see also Coregis Ins. Co. v. Harrisburg*, No. Civ.A.03-920, 2006 WL 860710, *4 (M.D.

Pa. Mar. 30, 2006).  A party may not use "factual averments contained in discovery evidence but

not reflected in the complaint itself" to establish a duty to defend.  *Scopel v. Donegal Mut. Ins.

Co.*, 698 A.2d 602, 607 (Pa. Super. Ct. 1997); *see also I.C.D. Indus., Inc. v. Federal Ins. Co.*, 879

F. Supp. 480, 487 (E.D. Pa. 1995) ("[E]xtrinsic evidence, such as discovery requests or questions

asked by counsel at a deposition, need not be considered when determining whether a particular

claim falls within the scope of the policy.").

The Underlying Complaint alleges intentional actions by Anderson against D.A.K.. These acts do not constitute an "accident," as required to fall within the definition of "occurrence" under the Policy.  Since Anderson fails to meet his burden of identifying any factual allegation in the Underlying Complaint that could potentially bring his claim within the scope of coverage, First Liberty has no obligation to provide a defense for Anderson.

### 2.  Whether the Anderson's Conduct Fell Within Policy Exclusions

Under Pennsylvania law, "[e]ven if a court finds that the underlying event constitutes an occurrence, the insurer may still establish that it is not required to defend because the underlying action falls under a policy exclusion precluding coverage for intentional acts." *Allstate Ins. Co. v. Hopfer*, 672 F. Supp. 2d 682, 686 (E.D. Pa. 2009).  "[T]he insurer bears the burden of proving the applicability of any exclusions or limitations on coverage, since disclaiming coverage on the basis of an exclusion is an affirmative defense." *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996).  "[E]xclusions are always strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206–07 (3d Cir. 2001).

Here, even assuming the Underlying Complaint's allegations could reasonably be read as an "occurrence," First Liberty contends that Anderson's conduct fell into two separate exclusions in the Policy: (1) the "expected" or "intentional" conduct exclusion, and (2) the "sexual molestation" or "physical or mental abuse" exclusion.

### a.  The "Expected" or "Intentional" Conduct Exclusion

The "expected" or "intended" exclusion in the Policy provides that coverage for personal

liability and medical payments to others does not apply to "bodily injury" or "property damage"

> [w]hich is expected or intended by the "insured", even if the resulting "bodily injury"
> or "property damage"
> (1) is of a different kind, quality, or degree than initially expected or intended; or
> (2) is sustained by a different person, entity, real or personal property, than initially
> expected or intended.
> However, this exclusion does not apply to "bodily injury" resulting from the use of
> reasonable force to protect persons or property.

(Policy, at Amendatory Endorsement form FMHO 2493, at 2.)  As a general rule in

Pennsylvania, a clause excluding coverage for intended or expected events "is ambiguous as a

matter of law and must be construed against the insurer."  *United Servs. Auto. Ass'n v. Elitzky*,

517 A.2d 982, 989 (Pa. Super. 1986).

"Although [Pennsylvania law] mandates a 'subjective intent' analysis for determining

coverage under an exclusionary clause in most Pennsylvania insurance cases, a different analysis

is applied in 'those exceptional cases involving sexual child abuse.'"  *Aetna Life and Cas. Co. v.*

*Barthelemy*, 33 F.3d 189, 191 (3d Cir. 1994) (quoting *Wiley v. State Farm Fire & Cas. Co.*, 995

F.2d 457, 460 (3d Cir. 1993)).  In child sex abuse cases, Pennsylvania has adopted the "inferred

intent" rule, which "allows a court to infer an actor's intent from the nature and character of his

or her acts" and to "establish conclusively the existence of intent to harm as a matter of law."

*Wiley*, 995 F.2d at 460.  The presumption is conclusive "notwithstanding the insured's assertion

of an absence of subjective intent to harm" and regardless of whether the sexual abuse was

"nonviolent" or "unaccompanied by penetration."  *Id.* at 463; *see also Aetna Cas. and Sur. Co. v.*

*Roe*, 650 A.2d 94, 102  (Pa. Super. Ct. 1994) (adopting the inferred intent rule and holding that

"harm to children in sexual molestation cases is inherent in the very act of sexual assault

committed on a child, regardless of the motivation for or nature of such assault, and that the

13

resulting injuries are, as a matter of law, intentional") (quotations omitted).

The Underlying Complaint clearly describes sexual abuse of a minor.  Indeed, Anderson concedes that his "alleged conduct was described in the underlying Complaint in a manner that was calculated to plead a legally sustainable cause of action for sexual assault."  (Pl.'s Mem. Supp. Summ. J. 7.)  Under Pennsylvania law, such allegations give rise to an irrebuttable presumption of intentional conduct.  Anderson's claim for coverage is excluded under the Policy.[4]

### b.      The Sexual Molestation or "Physical or Mental Abuse" Exclusion

Finally, First Liberty asserts that even if the "expected" or "intentional" conduct exclusion does not apply, Anderson's claims are barred under the Policy provision excluding coverage for "bodily injury" or "property damage" that arises out of "sexual molestation, corporal punishment or physical or mental abuse."  (Policy at 11–12.)  The Court agrees.

"Pennsylvania courts have not been opposed to enforcing molestation exclusions within policies."  *Westfield Ins. Co. v. Holland*, No. Civ.A.07-5496, 2008 WL 5378267, at *7 (E.D. Pa. Dec. 19, 2008) (citing *Neff v. Alterra Healthcare Corp.*, No. Civ.A.05-01421, 2006 WL 3490816

---

[4]  Even absent the "inferred intent" presumption, the Policy would still likely exclude coverage under the "expected" or "intentional" exclusion.  Anderson does not dispute that he intentionally engaged in the alleged acts, but argues only that he had no intent to sexually arouse either himself or D.A.K. with his admittedly "inappropriate behavior."  (Def.'s Mem. Supp. Summ. J. 17.)  Typical "expected" or "intentional" exclusion clauses in insurance policies exclude "only injury and damage of the same general type which the insured intended to cause . . . [and an] insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result."  *Elitzky*, 517 A.2d at 989.  The Policy language in this case, however, explicitly excludes coverage for injury caused by the insured's "expected" or "intentional" conduct "even if the resulting injury "(1) is of a different kind, quality, or degree than initially expected or intended; or (2) is sustained by a different person, entity, real or personal property, than initially expected or intended."  (Policy, at Amendatory Endorsement from FMHO 2493, at 2.)

14

(E.D. Pa. Dec. 4, 2006), *aff'd*, No. Civ.A.06-5130, 2008 WL 821070 (3d Cir. March 28, 2008);

*12th Street Gym Inc. v. Phila. Indemnity Ins. Co.*, No. Civ.A.031931, 2006 WL 1652690 (Pa.

Com. Pl. June 12, 2006)).  Even broad molestation exclusions have been enforced as

unambiguous.  *See Nat'l Cas. Co. v. Young*, No. Civ.A.07-4836, 2009 WL 2170105, at *6 (E.D.

Pa. July 17, 2009) (enforcing policy exclusion stating that "[c]overage is not afforded to the

individual who is alleged to have directly committed such 'sexual abuse or molestation.'" which

is defined as "any action or behavior or any physical contact or touching which is intended to or

which culminates in any sexual act.").

The complaint in the Underlying Action states that as a result of Anderson's conduct and

actions, D.A.K. endured "a) sexual abuse; b) sexual assault; c) indecent aggravated assault; d)

post traumatic stress disorder; e) extreme anxiety and dysfunction; f) past and future anxiety; g)

past and future stress; h) past and future grief; i) past and future nervousness; j) past and future

loss of appetite; k) past and future mental anguish; l) past and future humiliation; m) past and

future embarrassment; n) past and future loss of life's pleasures; o) need for psychologic and/or

psychiatric care; and p) past and future emotional distress."  (Underlying Compl. ¶ 12.)  Such

allegations fit squarely within the exclusion of coverage for "bodily injury" or "property damage"

"[a]rising out of sexual molestation, corporal punishment or physical or mental abuse."  Anderson

makes no attempt to address this exclusion or explain how it is inapplicable.  The exclusion

obviates First Liberty's obligations to defend.

### B.      Duty to Indemnify

"[T]he duty to indemnify . . . arises only if it is established that the insured's damages are

actually covered by the terms of the policy."  *Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152,

154 n.2 (3d Cir. 2006).  In other words, an insurer "must indemnify its insured only if liability is found for conduct that actually falls within the scope of the policy." *Britamco Underwriters, Inc. v. C.J.H., Inc.*, 845 F. Supp. 1090, 1094 (E.D. Pa.), *aff'd*, 37 F.3d 1485 (3d Cir. 1994).  Although a duty to defend can exist without a duty to indemnify, a duty to indemnify cannot exist without a duty to defend.  *Regent Ins. Co. v. Strausser Enters., Inc*., 902 F. Supp. 2d 628, 636 (E.D. Pa. 2012) (citing *The Frog, Switch & Mfg. Co., Inc. v. The Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999)).  "Thus, once a court finds that there is no duty to defend, it must necessarily hold that there is no duty to indemnify either."  *Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 702 (E.D. Pa. 2012) (citing *Meridian Mut. Ins. Co. v. James Gilligan Builders*, No. Civ.A.08-1995, 2009 WL 1704474, at *6 (E.D. Pa. June 18, 2009)).

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT,   J.

16